```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

            -against-                    MEMORANDUM & ORDER
                                         19-CR-0010-1(JS)
JUAN MARINE-ADAMES,

                    Defendant.
-----------------------------------X
APPEARANCES
For United States:   Bradley T. King, Esq.
                     United States Attorney's Office
                     610 Federal Plaza
                     Central Islip, New York 11722

For Defendant:       Edward J. McQuat, Esq.
                     The Blanch Law Firm[1]
                     261 Madison Avenue, 12th Floor
                     New York, New York 10016
```

SEYBERT, District Judge:

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Juan Marine-Adames ("Defendant") moves for compassionate release in light of health concerns surrounding the COVID-19 pandemic (the "Release Motion"). (See Mot., ECF No. 33.) The Government opposes said Motion. (See Opp'n, ECF No. 34.) For the reasons set forth below, the Release Motion is DENIED without prejudice.

---

[1] On October 12, 2020, Attorney McQuat filed a Notice of Appearance listing his address as: 5460 Vendelay Lane, Cummings, GA 30040. (See ECF No. 32.) However, he has not updated his contact information on the Case Docket.

BACKGROUND

The Court presumes the parties' familiarity with the facts and procedural history of this case but provides the following summary for the reader's convenience.

I. Factual and Procedural History

After having been convicted of offenses involving the possession of cocaine in 2012 and 2013 and while serving a three-year probationary sentence for drunk driving, in October 2018 Defendant was charged with possessing cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (See Compl., ECF No. 1; see also Gov't Sent'g Mem., ECF No. 20, at Part I(B).) Specifically, Defendant was arrested after law enforcement discovered approximately 400 grams of cocaine in his home, along with a digital scale, a kilogram press and other drug paraphernalia, with the intent to sell. On January 10, 2019, Defendant pled guilty to one count of possession of a controlled substance with intent to distribute. (See Minute Entry of Plea Allocution, ECF No. 17). On August 5, 2019 and upon consideration of his significant criminal history, the Court sentenced Defendant to 37 months' imprisonment, the top end of the applicable United States Sentencing Guidelines. (See Aug. 13, 2019 Sent'g Tr. ("Sent'g Tr.") at 15-16, attached as Ex. A, ECF No. 34-1, to Opp'n.) Defendant appealed his sentence (see Notice of Appeal,

ECF No. 29), but subsequently stipulated to its withdrawal. (See Mandate, ECF No. 31 ("so ordering" stipulation of withdrawal)).

II. The Pending Release Motion

On October 12, 2020 and through counsel, Defendant moved for compassionate release, requesting that the Court decrease his sentence to time-served "so he can avoid the Covid-19 outbreak at Moshannon Valley Correctional Center" (hereafter, "MVCI"), located in Philipsburg, Pennsylvania, and where Defendant is currently incarcerated. (Release Motion at 1.) He contends he is at a higher risk of contracting COVID-19 because he is overweight and is diagnosed with diabetic, high cholesterol, and high blood pressure. (See Support Memo, ECF No. 33-1, at 2-3.) Defendant further maintains that he: "does not pose a threat to himself or the community" having "exhibited no violent behavior . . . prior to incarceration and while an inmate in the BOP system"; "has complied with all the rules during incarceration"; and has "cooperated fully with officials and the medical staff." (Id. at 6.) If released, Defendant "agree[s] to an Order of Deportation at the time ICE enforces the current detainer lodged against him . . . ." (Release Motion at 1; see also Support Memo at 5.) Alternatively, Defendant requests to serve the balance of his sentence under house arrest at the Bronx, New York residence of his adult son's mother. (See Support Memo at 6.)

The Government opposed Defendant's Release Motion, arguing that "the record demonstrates that the [D]efendant's alleged health issues are entirely of his own making," with Defendant "ha[aving] expressly rejected efforts by Bureau of Prisons ('BOP') medical staff to improve his health through recommended healthy meals and exercise." (Opp'n at 2 (citing July 23, 2020 Refusal of Heart Healthy Menu form (attached as Sealed Exhibit B)).) Moreover, at the time it submitted its November 2020 opposition, the Government claimed that, "there ha[d] been only two cases of COVID-19 among the 1,550 housed in [MVCI]," and that "[n]either of these two inmates was housed in the same housing 'pod' as the defendant," with the two infected inmates "hav[ing] been placed in quarantine, away from the defendant and other inmates." (Id. at 3.) Further, the Government urged the Court to reject Defendant's suggestions that release to an immigration detention center or to a residence in the Bronx, where infection rates are much higher than in MVCI, are safer alternatives for Defendant. (See id. ("[I]f the defendant cannot manage his underlying conditions in a secure environment with demonstrably engaged and caring medical attention, his claim that a changed environment is needed to protect him from COVID-19 is transparently false.").)

In his December 3, 2020 reply, the Defendant essentially argued that it is inconsequential why he suffers from diabetes and

4

related health conditions; rather, in considering his susceptibility to COVID-19, the Court's focus should be only that Defendant suffers from these pre-existing conditions, placing him at higher risk of complications should he contract the virus. (See Reply, ECF No. 36, at 1.) Of further significance, Defendant also points to the rising number of COVID-19 positive cases among the prison population at MVCI, offering, by way of example, a one-day, fifty percent (50%) increase in the number of positive cases. (See id. at 2 (stating that on November 30, 2020, 22 MVC inmates tested positive for COVID-19, and on December 1, 2020, that number increased to 33 MVCI inmates).) Finally, Defendant asks the Court to exercise its broad discretion, United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020), i.e., to determine whether extraordinary and compelling circumstances justify his release, notwithstanding the Government's contention that Zullo was wrongly decided. (See id.; cf. Opp'n at 15 n.3.)

On December 30, 2020, Defendant's counsel filed a letter informing the Court that, on December 29, 2020, Defendant's adult son ("Son") and Son's mother informed counsel that prison personnel had informed Son that Defendant: had tested positive for COVID-19; had been sent to MVCI's medical unit; but had then been transferred to an unknown hospital facility outside the prison for treatment. (See Information Letter, ECF No. 37.) Counsel further stated that, as of December 29, 2020, MCVI reported 52 COVID-19

5

confirmed inmate cases; one death; and, 115 cases of recovery. (See id.)

Thereafter, on January 19, 2021, the Court directed "Defendant's counsel . . . to file a Status Report with the Court regarding Defendant's current COVID condition and his location, as well as any further relevant information of which he believes the Court should be apprised." (Case Docket, Jan. 19, 2021 Elec. ORDER.) In compliance, on January 28, 2021, counsel filed a status update (see Update Letter, ECF No. 38), informing the Court, inter alia: that after being transferred to an emergency room, Defendant was admitted to the hospital on December 23, 2020; Defendant tested positive for COVID-19 and was treated for hypoxic respiratory failure; Defendant's respiratory status and oxygen demands fluctuated; on December 27, 2020, Defendant was transferred to a higher level of care; and, thereafter, Defendant's condition stabilized. (See id. at 1 (quoting Jan. 26, 2021 Email from MVCI's Health Serv. Adm'r, attached as Ex. A, ECF No. 38-1, to Update Letter).) "The hospital has been working to wean [Defendant] from oxygen. . . . His oxygen demands remain to [sic] high for PT/OT consults as he desaturates quickly with exertion." (Id. (quoting Ex. A).) It is counsel's understanding that Defendant's "course of treatment seems to be consistent with that applied to other Covid-19 cases." (Id. at 2.) Counsel has no current information regarding Defendant's prognosis or anticipated hospital release

6

date. (See id.) As of the date of this Order, Defendant remains hospitalized outside the MVCI prison facility but under the BOP's custody. (See id.)

## DISCUSSION

I. Specific Facts Relevant to Defendant's Release Motion

Defendant has been detained since October 8, 2018, approximately 28 months; he is fifty-three (53) years old, and suffers from obesity, type II diabetes, hypertension, hyperlipidemia, and, as a result of these conditions, has a high cardiac risk factor. (See Support Memo at 3-4.) His conditions are treated through medications and health counseling. (See id. at 2-3.) He is currently incarcerated at MVCI, a privately-managed prison under contract and oversight of the BOP that houses sentenced alien defendants who will be deported upon completion of their sentences, and is expected to be released on May 27, 2021. (See id. at 5); Find An Inmate, BOP.gov, www.bop.gov/inmateloc/index.jsp (last visited Feb. 2, 2021); COVID-19 Cases, BOP.gov, www.bop.gov/coronavirus/ (accessible via the "privately-managed prisons" hyperlink) (last visited Feb. 3, 2021.) According to information maintained by the BOP for MVCI, as of February 3, 2021: five (5) inmates were COVID-19 positive; three (3) inmates have died from the virus; and 188 inmates have recovered from it. See COVID-19 Cases, BOP.gov, http://www.bop.gov/coronavirus/ (accessible via the "privately-

7

managed prisons" hyperlink) (last visited Feb. 3, 2021.). While incarcerated, Defendant "exhibited no violent behavior", and "cooperated fully with officials and the medical staff." (Support Memo at 6.)

II. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, No. 02-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in

8

18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." Brooker, 976 F.3d at 237; see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis and alteration in original).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of

showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

III. Analysis

The parties do not dispute that Defendant exhausted his administrative remedies. Thus, the Court turns to the merits of the Motion.

Here, Defendant has not demonstrated extraordinary and compelling circumstances warranting a reduction of his sentence. The Court has reviewed Defendant's submissions and recognizes that he understandably feared contracting COVID-19 while incarcerated. However, "[s]uch a generalized fear, . . . does not constitute an extraordinary and compelling reason for compassionate release." United States v. Black, No. 12-CR-0103, 2020 WL 4192243, at *4-5 (W.D.N.Y. July 21, 2020) (collecting cases). Moreover, Defendant's motion differs from many the Court has received because he has, unfortunately, contracted COVID-19 and has been, and is currently, hospitalized for treatment. (See, e.g., Information Letter; Update Letter.) Indeed, "[a] number of district courts in the Second Circuit have found an inmate's positive test undermines his case for compassionate release on the basis of his susceptibility to COVID-19 because the main point of releasing an individual is to decrease the person's chance of contracting COVID-19." United States v. Rodriguez, No. 3:19-CR-0064(19), 2020 WL

10

4581741, at *2 (D. Conn. Aug. 10, 2020); see also United States v. Russo, 454 F. Supp. 3d 270, 279 (S.D.N.Y. 2020)(denying compassionate release upon learning defendant contracted COVID-19, as requested release would not make the defendant, or other federal prisoners, safer).[2]

Further, the Court is well-aware that Defendant suffers from certain underlying medical conditions. However, as the Government aptly argues, "the medical records [demonstrate] that [D]efendant has been receiving appropriate care for his Type II diabetes, high cholesterol and high blood pressure." (Opp'n at 5

---

[2] The Court notes this case in distinguishable from United State v. Vega, a recent case where the undersigned granted compassionate release to the defendant, a 65-year-old "Chronic Care" inmate at FCI Fort Dix, a facility with an "uncontrolled outbreak of COVID-19," who had contracted the virus. Case No. 89-CR-0229(2), 2020 WL 7060153, at *2, *3 (E.D.N.Y. Dec. 2, 2020). Relying upon Vega's "unique facts" not present in the instant case, this Court found, "given Defendant's underlying health conditions, 'his recent COVID-19 infection, and the failure of the Bureau of Prisons to prevent and control a COVID-19 outbreak at FCI Fort Dix,' . . . that continued confinement "'substantially diminishes' his 'ability . . . to provide self-care.' " Id. at *3 (quoting United States v. Mongelli, No. 02-CR-0307, 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020); further citation omitted). Here, in contrast, the "diminishment in the ability to provide self-care" factor carries little weight since, by virtue of his current hospitalization, Defendant is not expected to provide such care. Additionally, MVCI's infection rate does not indicate an "uncontrolled outbreak" like that experienced at FCI Fort Dix at the time Vega was decided. Compare id. (indicating that at the end of November 2020, there were approximately 250 inmates at FCI Fort Dix who tested positive for COVID-19), with MCVI statistics, cited supra (noting approximately five (5) inmates tested positive for COVID-19).

11

(citing Gov't's Ex. D (Defendant's sealed medical records), ECF No. 35-3, attached to Opp'n; Pl.'s Ex. 2 (MVCI's denial of Defendant's compassionate release requested because Defendant was receiving appropriate care for his diabetes, high blood pressure, and high cholesterol and MVCI was following all COVID-19 guidance received from the Centers for Disease Control), ECF No. 32-4, at 3, attached to Support Memo.) Defendant, himself, acknowledges that he is being treated for his several underlying health conditions (see Support Memo at 2-3; Reply at 1), and he does not contend that "his medical care has been hampered by the pandemic." United States v. Mateus, No. 14-CR-0504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020); see also United States v. Lindo, No. 15-CR-0854, 2020 WL 5038766, at *1 (S.D.N.Y. Aug. 26, 2020)(denying compassionate release where defendant did not suggest that he was receiving inadequate medical treatment for an underlying preexisting health condition at the prison where he was housed).

Further, acknowledging Defendant's representations regarding an outbreak of COVID-19, according to the information maintained by the BOP for MVCI, as of February 3, 2021, while the number of inmate deaths have increased from the one (1) Defendant identified in his December 30, 2020 Information Letter to three (3), the number of cases of inmates infected with COVID-19 has decreased from the 33 Defendant reported to five (5). See COVID-19 Cases, BOP.gov, http://www.bop.gov/coronavirus/ (accessible via

the "privately-managed prisons" hyperlink) (last visited Feb. 3, 2021). This further counsels against granting the Release Motion.

Finally, the Court has considered the Section 3553(a) factors and finds they do not support release. See § 3582(c)(1)(A)(i). "Indeed, factors such as 'the nature and circumstances of the offense and the history and characteristics of the defendant' and 'the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct' weigh against [Defendant]'s release." Lindo, 2020 WL 5038766, at *2 (citing 18 U.S.C. § 3553(a)(ellipses in original)).

First, as to Defendant's criminal history, it spans more than thirty (30) years and includes several drug-related offenses. For example: in 1987, Defendant was convicted of Criminal Sale of a Controlled Substance in the Second Degree and sentenced to five-years-to-life imprisonment; in 2012, Defendant was convicted of Criminal Possession of a Controlled Substance in the Seventh Degree after he was found in possession of approximately 500 grams of cocaine; in 2013, Defendant was again found in possession of cocaine and convicted of Criminal Possession of a Controlled Substance in the Seventh Degree; thereafter, Defendant was convicted of Driving While Intoxicated and sentenced to three years' probation, a sentence that he was serving at the time that

13

he committed the underlying drug offense. Defendant's significant record of recidivism warranted a 37-month sentence, the top end of the applicable Guidelines range.

Second, as to the nature and circumstances of the offense: Following a long-term, Drug Enforcement Administration ("DEA") investigation that revealed Defendant was distributing narcotics from his residence in Copiague, New York, where his children resided (see PSR, ECF No. 18 (sealed), ¶¶ 3-4, 39), the DEA executed a search warrant of Defendant's residence (see id. at ¶ 4).  In doing so, DEA agents observed Defendant in close proximity to approximately 410 grams of cocaine, a digital scale, and $1,500 in cash.  (See id.)  Further, during the search, Defendant admitted to the the agents that the cocaine, scale, cash, and a kilogram press (a device used to package bricks of cocaine for distribution and found in the search) were his.  (See id.)

Third, when imposing Defendant's current, high-end 37-month sentence, the undersigned: emphasized the dangerousness of Defendant's conduct, i.e., running a "professional" cocaine-dealing operation out of the home he shared with his children (see Sent'g Tr. at 4, 15); and, relied upon Defendant's commission of a drug trafficking offense while on probation and after having already received a five-years-to-life prison sentence for a prior narcotics-related offense. (See id. at 5, 15-16); see also United States v. Asaro, No. 17-CR-0127, 2020 WL 1899221, at *7 (E.D.N.Y.

14

Apr. 17, 2020)("The nature and circumstances of [defendant's] offense of conviction -- to which he pleaded guilty -- are serious.").

Finally, converting the Defendant's sentence to time-served would not serve the goals of "personal" and "general" deterrence that the Court reasoned its sentence furthered. (See Sent'g Tr. at 15-16). In that vein, the Court agrees with the Government's summation: "For nearly thirty years, the [D]efendant has repeatedly flouted this nation's narcotics laws and he was arrested based upon a long-term DEA investigation that showed him to be a dedicated recidivist, operating a 'professional' cocaine-selling operation out of the home that he shared with his 'children,' while serving a probationary sentence." (Opp'n at 19 (citing Sent'g Tr. at 15-16).) Indeed, Defendant's recidivism "was factored into the sentence he currently is serving and counsels against granting leniency from the sentence imposed. [(See, e.g., Sent'g Tr. at 16.)] [Defendant] has not demonstrated through his past behavior that he has been adequately deterred by the risk of incarceration or supervised release." United States v. Okpala, No. 17-CR-0533, 2020 WL 1864889, at *2 (E.D.N.Y. Apr. 14, 2020); cf. United States v. Knight, No. 17-CR-0335, 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) ("Though Defendant has served more than 70% of his anticipated term of imprisonment, considering his expected good time credit, his crime is serious

15

and warrants him serving his full term of imprisonment."[3]). In sum, the Court "intended then, and intends now, for [Defendant] to serve the totality of that sentence." Mateus, 2020 WL 5096062, at *4. Accordingly, the original sentence remains sufficient, but not greater than necessary, to "reflect the seriousness of the offense" and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); see also United States v. Benitez, No. 15-CR-0060, 2020 WL 7711855, at *3 (E.D.N.Y. Dec. 28, 2020) ("Although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals," such as Defendant, who suffer from obesity, type II diabetes, hypertension, and hyperlipidemia, "the Court finds that the requested relief is inconsistent with the section 3553(a) factors.").

Thus, the Court denies release at this time.

[Remainder of page intentionally left blank.]

---

[3] In this instance, Defendant has served approximately 28 of the 37 months to which he was sentenced, i.e., 75% of his sentence.

CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 33) is DENIED without prejudice to renew.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February __8__, 2021
       Central Islip, New York

17